IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CARGILL COCOA & CHOCOLATE, INC.,   )
                                   )
                Plaintiff          )
                                   )        Civil Action
         vs.                       )        No. 13-cv-06004
                                   )
ABCO LABORATORIES, INC.,           )
                                   )
                Defendant          )

*   *   *

APPEARANCES:

        MADELINE S. BAIO, ESQUIRE and
        JENNIFER M. MANNION, ESQUIRE
                On behalf of Plaintiff

        ROBERT J. KAHN, ESQUIRE and
        DAVID I. ROSENBAUM, ESQUIRE
                On behalf of Defendant

*   *   *

**O P I N I O N**

JAMES KNOLL GARDNER
United States District Judge

[SPACE INTENTIONALLY LEFT BLANK]

### TABLE OF CONTENTS

SUMMARY OF DECISION.................................................. 4

JURISDICTION........................................................ 6

VENUE............................................................... 6

PROCEDURAL HISTORY.................................................. 7

STANDARD OF REVIEW.................................................. 8

     Personal Jurisdiction........................................ 8

     Venue........................................................ 9

PLAINTIFF'S CLAIM................................................... 9

FACTS.............................................................. 10

     Origin of the Parties' Business Relationship............ 11

     Parties' Business Relationship.......................... 14

     Contracts Involved in This Action....................... 17

          February 2011.................................... 17

          March 2011....................................... 19

          The Instant Dispute.............................. 22

          Long-Term Partnership............................ 24

CONTENTIONS OF THE PARTIES......................................... 24

     Contentions of Defendant................................ 24

     Contentions of Plaintiff................................ 26

DISCUSSION......................................................... 28

     A Single Issue Controls................................. 28

     Specific Personal Jurisdiction.......................... 30

          Contract Disputes................................ 33

          Application of the Above to This Case............. 36

          Choice-of-Law Provision.......................... 41

          Defendant's "Unilateral Activity" Argument......... 45

          "Fair Play and Substantial Justice"................ 54

CONCLUSION......................................................... 56

This matter is before the court for a hearing on [Defendant] ABCO Laboratories, Inc.'s Motion to Dismiss Under Rules 12(b)(2) and 12(b)(3) and to Strike Under Rule 12(f), which motion was filed December 2, 2013 (Document 10)("Motion").[1]

---

[1]     The Motion was filed together with the following documents:

    (A)     Exhibit A to Defendant's Motion to Dismiss, Declaration of Allen Baron which declaration was executed November 27, 2013 (Document 10-1)("Baron Declaration");

    (B)     Exhibit B to Defendant's Motion to Dismiss, Declaration of Carl Falcone which declaration was executed November 27, 2013 ("Falcone Declaration"), and Exhibits A though I to the Falcone Declaration (together, Document 10-2);

    (C)     Exhibit C to Defendant's Motion to Dismiss, Declaration of Jessica Chua, which declaration was executed November 27, 2013 ("Chua Declaration"), and Exhibits A through E to the Chua Declaration (together, Document 10-3); and

    (D)     [Defendant] ABCO Laboratories, Inc.'s Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint Under Rules 12(b)(2) and 12(b)(3) and to Strike Under Rule 12(f) (Document 10-4)("ABCO Brief").

On January 20, 2014, [Plaintiff] Cargill Cocoa & Chocolate, Inc.'s Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint Under Rules 12(b)(2) and 12(b)(3) and to Strike Under Rule 12(f) was filed (Document 13)("Plaintiff's Reponse"), together with the following documents:

    (A)     [Plaintiff] Cargill Cocoa & Chocolate, Inc.'s Memorandum of Law in Support of Its Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint Under Rules 12(b)(2) and 12(b)(3) and to Strike Under Rule 12(f) (Document 13-1)("Plaintiff's Memorandum"); and

    (1)     Exhibit A to Plaintiff's Memorandum (Document 13-2), Declaration of Hugo van der Goes, which declaration was executed January 20, 2014;

    (2)     Exhibit B to Plaintiff's Memorandum (Document 13-3), screenshot of the "About Us" page of the website of ABCO Laboratories, Inc. taken January 20, 2014;

(Footnote 1 continued):

For the reasons expressed below, I deny the Motion to the extent that it seeks to dismiss this action for lack of personal jurisdiction and improper venue, and dismiss the motion as moot to the extent it seeks to strike plaintiff's now-withdrawn request for attorney's fees.

## SUMMARY OF DECISION

If specific personal jurisdiction over a defendant could properly exist in but one forum state, and the key question was, therefore, "With which state does defendant have the greatest number of contacts related to this particular cause

---

(Continuation of footnote 1):

        (3)   Exhibit C to Plaintiff's Memorandum (Document 13-4), screenshot of a product-listing and -order page of the website of ABCO Laboratories, Inc. taken January 20, 2014;

        (4)   Exhibit D to Plaintiff's Memorandum (Document 13-5), screenshot of United States Food and Drug Administration, Enforcement Report -- Week of July 10, 2013, which screenshot was taken January 20, 2014; and

        (5)   Exhibit E to Plaintiff's Memorandum (Document 13-6), email sent January 31, 2012 at 10:51 a.m. from Carl Falcone (at ABCO) to Claudia Soltero (nee, Claudia Riquelme)(at Cargill).

      On February 3, 2014, [Defendant] ABCO Laboratories, Inc.'s Reply Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint Under Rules 12(b)(2) and 12(b)(3) and to Strike Under Rule 12(f) was filed (Document 17)("Defendant's Reply Brief"), together with

        (A)   Exhibit A to Defendant's Reply Brief (Document 17-1), copy of three emails exchanged on March 30, 2011 between Lisa Roberts (at Gargill) to Carl Falcone (at ABCO);

        (B)   Exhibit B to Defendant's Reply Brief (Document 17-2), Reply Declaration of Allen Baron executed February 2, 2014 ("Baron Reply Declaration"), and Exhibit A to the Baron Reply Declaration.

of action?", then the answer in this case would be California and defendant ABCO Laboratories, Inc. ("ABCO") would prevail on its within Motion to dismiss for lack of personal jurisdiction. However, such is not the question and, so, not the result.

Specific personal jurisdiction over a defendant may properly exist in more than one forum state with respect to a single cause of action.  And, rather than seeking to identify the state with which defendant has the most substantial contacts related to the cause of action, the pertinent analysis concerns whether a defendant has sufficient minimum contacts with plaintiff's chosen forum such that prosecution of the action in that state will not offend traditional notions of fair play and substantial justice.

This breach of contract action arises out of the business relationship between Plaintiff Cargill Cocoa & Chocolate, Inc. ("Cargill") and defendant ABCO wherein Cargill supplied cocoa to ABCO, as a raw material, which ABCO then utilizes in its manufacturing process.  Cargill selected its home Commonwealth of Pennsylvania as the forum in which to assert its claim.

Although this breach of contract action may accurately be described as "California centric", the evidence and testimony presented at the hearing on the within Motion demonstrates that defendant ABCO nevertheless has sufficient minimum contacts with

-5-

Pennsylvania (and, more specifically, this judicial district) that prosecution of the action here does not offend traditional notions of fair play and substantial justice.

Thus, specific personal jurisdiction exists over defendant ABCO in Pennsylvania and ABCO resides, for purposes of venue, in this judicial district. Accordingly, I deny the within Motion to the extent that it seeks to dismiss this action for lack of personal jurisdiction and improper venue.

Moreover, I dismiss the within Motion as moot to the extent that it seeks to strike that request because plaintiff has withdrawn its request for attorney fees.

### JURISDICTION

This court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because plaintiff is a citizen of Pennsylvania and defendant is a citizen of California and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

### VENUE

As explained further below, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because the sole defendant is subject to personal jurisdiction in this judicial district and is, therefore, deemed to reside in this district for purposes of venue. 28 U.S.C. § 1391(b)(1), (c)(2), (d).

## PROCEDURAL HISTORY

Plaintiff initiated this breach of contact action by filing a one-count Complaint on October 22, 2013.[2]  Plaintiff filed an Amended Complaint on October 22, 2013 asserting the same claim.[3]

Defendant filed the within Motion to dismiss and to strike on December 2, 2013.  Plaintiff Response was filed on January 20, 2014.  Defendant's Reply Brief was filed on February 3, 2014.

On April 30, 2014, I signed an Order approving a stipulation between the parties to withdraw plaintiff's request for attorneys' fees.[4]

A hearing on the Motion was held before me on April 30, 2014, June 5, 2014, and July 8, 2014.[5]  At the hearing, plaintiff's Exhibits 1 through 31 and Defense Exhibits 1 through 25 were admitted into evidence.  Plaintiff presented testimony

---

[2]         Document 1.

[3]         The Amended Complaint (Document 3) asserts the same breach of contract claim as the initial Complaint.  Plaintiff amended, slightly, its factual averments concerning the citizenship of the parties so as to properly plead the grounds upon which this court's subject matter jurisdiction depends.  The Amended Complaint properly pleads the grounds upon which this court's jurisdiction depends.

[4]         Order of the undersigned dated April 30, 2014 and filed May 2, 2014 (Document 23).

[5]         The transcript of each day of the hearing is available on the docket entries in this matter as Documents 28, 37, and 40, respectively, and are referred to herein as "Day 1 Transcript", "Day 2 Transcript", and "Day 3 Transcript", respectively.

of Hugo van der Goes, Vice President of Commercial Operations for Cargill.  Defendant presented testimony of Allen Barron, Chief Executive Officer (and founder) of ABCO.  Counsel for the parties presented closing arguments.  At the conclusion of the hearing, I took the matter under advisement.

Hence this Opinion.

## STANDARD OF REVIEW

### Personal Jurisdiction

When a defendant raises a jurisdictional defense in a motion to dismiss, the plaintiff bears the burden of proving that jurisdiction is proper.  Metcalf v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).  The court may proceed either by affidavits and sworn documents, or by hearing. Atiyeh v. Hadeed, 2007 U.S.Dist. LEXIS 19534 at *14 (E.D.Pa. Mar. 20, 2007)(Pratter, J.).

If the district court does not hold an evidentiary hearing, the plaintiff "need only establish a prima facie case of personal jurisdiction."  Metcalf, 566 F.3d at 330 (quoting O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007)).

If the court conducts an evidentiary hearing, plaintiff has a more substantial burden of proving that personal jurisdiction is proper by a preponderance of the evidence. Atiyeh, 2007 U.S.Dist. LEXIS 19534 at *14.

## Venue

When a defendant seeks to have a case dismissed for improper venue, the moving defendant bears the burden of demonstrating that the present venue is improper.  Myers v. American Dental Association, 695 F.2d 716, 724-725 (3d Cir. 1982), cert. denied, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983); see Simon v. Ward, 80 F.Supp.2d 464, 466 (E.D.Pa. 2000)(Reed, S.J.)(discussing and applying Myers, supra).

A district court may examine facts outside the complaint to determine whether its venue is proper, but must draw all reasonable inferences and resolve all factual conflicts in plaintiff's favor.  Heft v. AAI Corporation, 355 F.Supp.2d 757, 762 (M.D.Pa. 2005).

## PLAINTIFF'S CLAIM

Plaintiff Cargill alleges that defendant ABCO entered into three sales contracts to purchase cocoa from Cargill -- two sales contracts on March 18, 2011 (contract numbers 2948 and 2945)[6], and one sales contract on April 6, 2011 (contract number 3070).[7]  Plaintiff Cargill further alleges that, although defendant ABCO accepted and paid for the cocoa covered by the second March 18, 2011 sales contract (contract number 2945),

---

[6]        Amended Complaint at ¶¶ 9-10.

[7]        Id. at ¶ 11.

ABCO refused to place orders against, and to pay for, the cocoa covered in the first March 18, 2011 sales contract (contract number 2948) and the only April 6, 2011 sales contracts (contract number 3070).[8]

Plaintiff Cargill alleges that it notified defendant ABCO of ABCO's default under those two contracts and, despite that notice, ABCO refused, and continues to refuse to pay the balance due under those two contracts or to accept delivery of the contracted cocoa.[9]

## FACTS

Based on the pleadings, record papers, and exhibits and testimony presented at the hearing on this Motion, to the extent I found it credible, the pertinent facts are as follows.

Plaintiff Cargill Cocoa & Chocolate, Inc. is a Pennsylvania corporation with its principal place of business in Lititz, Lancaster County, Pennsylvania.  Cargill is a cocoa and chocolate company which provides cocoa and chocolate products for chocolate confectionery and food manufacturers.[10]

Defendant ABCO Laboratories, Inc. is a California corporation with its principal place of business in Fairfield,

---

[8]        Amended Complaint at ¶¶ 15-17.

[9]        Id. at ¶¶ 18-19.

[10]       Id. at ¶ 7.

Solano County, California.[11]   ABCO is a manufacturer for the food

and nutritional products industries.[12]   ABCO is a California-

based business.   It does not maintain, and has not maintained,

business infrastructure in Pennsylvania.[13]

     In short, Cargill supplies cocoa to ABCO, as a raw

material, which ABCO then utilizes in its manufacturing process.

### Origin of the Parties' Business Relationship

     The origin[14] of the parties' business relationship

involves a third entity, referred to by the parties at motion

hearing as "Mattson".

---

[11]     Plaintiff's Exhibit 6, Declaration of Hugo van der Goes executed
January 20, 2014 ("van der Goes Declaration"), at ¶ 1; Defense Exhibit 3,
Declaration of Allen Baron executed November 27, 2013 ("Baron Declaration"),
at ¶ 5.

[12]     Baron Declaration at ¶ 3.

[13]     According to Mr. Baron's declaration, defendant ABCO is not, and
has never been, licensed to do business in Pennsylvania; does not have, and
has never had, offices or manufacturing, distribution, or sales facilities in
Pennsylvania; does not lease, and has never leased, property in Pennsylvania;
does not own, and has never owned, bank accounts in Pennsylvania; does not
have, and has never had, phone or fax lines in Pennsylvania; and does not
have, and has never had, an agent designated to accept service of process in
Pennsylvania.

[14]     The parties present markedly different versions of the genesis of
their business relationship and the putative contracts at the center of this
dispute.

     According to defendant ABCO, "[t]his civil action concerns
alleged contracts for the sale of cocoa powder to a California buyer, ABCO,
the catalyst for which was an unsolicited email from the Pennsylvania seller,
Cargill." (Defendant's Brief at page 2.)  Specifically, defendant ABCO
contends that the purported contracts at issue here arose from an
"unsolicited" February 2011 email from Lisa Roberts, Western Regional Sales
Manager for Cargill, to Carl Falcone, Director of Purchasing for ABCO. (Id.
at 3-4.)

                                        (Footnote 14 continued):

Mattson is a "food consultant" which works with other companies to develop product formulations.  Mattson is not a customer of Cargill, per se, in that Mattson does not contract with Cargill (as ABCO has) for the purchase of wholesale quantities of chocolate or cocoa products.  Rather, Mattson obtains samples from raw-material suppliers or vendors (such as, and including, Cargill) which Mattson then utilizes in the development of product formulations for its own customers.[15]

In the fall of 2007, Mattson developed a new chocolate seasoning to be used in the production of chocolate-covered almonds for one of its clients, Diamond of California (the processor of the Diamond nuts sold in grocery and convenience stores).  The new chocolate seasoning formula called, specifically, for the use of Cargill cocoa (more specifically, Gerken's 10/12 Russet Cocoa Powder and Gerken's Black Cocoa

---

(Continuation of footnote 14):

Not so, says plaintiff Cargill.  According to plaintiff Cargill, "[t]he contracts at issue were continuations of a business relationship that ABCO knowingly and purposefully established with Cargill, a Pennsylvania corporation, as its supplier of cocoa."  (Plaintiff's Memorandum at page 6.)  Specifically, plaintiff Cargill contends that "ABCO sought out the business of Cargill by placing an unsolicited phone call to Cargill's place of business in Lititz, Pennsylvania in approximately 2008."  (Id.)

Ultimately, plaintiff Cargill contends that defendant ABCO reached out to it and established the ongoing business relationship from which the instant dispute arose.

[15]      Day 2 Transcript at pages 81-82 (testimony of Hugo van der Goes).

Powder).[16]  Mattson contacted ABCO about manufacturing the new chocolate seasoning for Diamond.

ABCO, through John Fukushima (a Food Scientist), initiated direct contact with Cargill through his October 24, 2007 email to Lisa Roberts (the West Coast Sales Manager for Cargill).  Lisa Roberts was based in Portland, Oregon.[17]  John Fukushima worked in California.[18]

On November 20, 2007, Ms. Roberts exchanged emails with Kristin K. Reedy, Purchasing Manager at ABCO.  During this exchange, Ms. Roberts wrote to Ms. Reedy:

> Hi Kristin,
>
> Also, going forward please fax your orders to our main office: 717.626.3484.  I've forwarded the order that I received on my fax just now.  I travel and I don't want one held up if I am out of the office as a work from a remote location.
>
> Thanks! Lisa[19]

That is, Cargill's representative Lisa Roberts on the west coast requested that ABCO send future Purchase Orders

---

[16]    Day 2 Transcript at pages 143-148 (testimony of Allen Baron); Defense Exhibit 5 at page 2, Confidential Preliminary Formulation for Chocolate Roast Seasoning issued October 1, 2007; Defense Exhibit 10, Declaration of John Fukushima executed June 3, 2014 ("Fukushima Declaration"), at ¶¶ 5-12.

[17]    Day 2 Transcript at page 21 (testimony of Hugo van der Goes).

[18]    Fukushima Declaration at ¶ 2.

[19]    Defense Exhibit 11, email from Lisa Roberts to Kristin Reedy sent on Tuesday, November 20, 2007 at 2:09 p.m.

against cocoa contracts directly to Cargill's headquarters in Lititz, Pennsylvania.  ABCO complied with that request as to its future purchase orders, faxing them to Cargill's Pennsylvania headquarters.[20]

In September 2009, negotiations arising from the Mattson project resulted in ABCO's first contracts with Cargill.[21]

### Parties' Business Relationship

ABCO has engaged in negotiations with Cargill employees located in Lititz, Pennsylvania by telephone and email regarding contracts with Cargill for the sale of cocoa.[22]

Between September 15, 2008 and March 8, 2011, ABCO received at least five deliveries of product samples which were sent by Cargill from Lititz, Pennsylvania.[23]  Plaintiff Exhibits 7 through 12 are five Cargill Cocoa & Chocolate Sample Request Forms for samples to be sent to ABCO.  According to plaintiff's CRM software, sample requests from defendant were handled by

---

[20]     See, e.g., Defense Exhibit 22, Declaration of Jessica Chua executed November 27, 2013 ("Chua Declaration"), at Exhibit A, copy of ABCO Purchase Order 87478 dated February 7, 2012; Defense Exhibit 25, copy of ABCO Purchase Order 78312 dated September 28, 2009.

[21]     See Day 2 Transcript at page 148 (testimony of Allen Baron); van der Goes Declaration at ¶ 7; Plaintiff's Exhibits 13 and 14 (Sales Contract Numbers 17888 and 17891, respectively).

[22]     van der Goes Declaration at ¶ 6.

[23]     Id. at ¶ 5.

Lisa Roberts in Oregon in some instances and by Kimberly Yoder or Brandon Cicero in Pennsylvania in others.[24]

Prior to the contracts at issue here (described below), ABCO and Cargill entered into at least five previous contracts for the sale of cocoa by Cargill to ABCO beginning in September 2009 -- specifically, contract numbers 17888, 17891, 18241, 19081 (all 10/12 Midnight cocoa powder), and 19082 (10/12 Russet cocoa powder).[25]

ABCO sent numerous Purchase Orders by email or fax to Cargill's Sales or Customer Service Departments located in Lititz, Pennsylvania.  It is through such Purchase Orders that ABCO requested shipments of cocoa against the total quantity of cocoa under a particular contract number.[26]

Between 2009 and 2012, ABCO purchased 274,000 pounds of cocoa from Cargill.  Purchase Orders for that cocoa were submitted to Cargill's headquarters in Lititz, Pennsylvania.[27]

With respect to each prior fulfilled and undisputed contract, ABCO sent Purchase Orders against the total

---

[24]     Day 2 Transcript at pages 20-21 (testimony of Hugo van der Goes).

[25]     See van der Goes Declaration at ¶ 7.

[26]     Id. at ¶ 9.

[27]     Day 2 Transcript at page 51 (testimony of Hugo van der Goes).

contracted-for quantity of cocoa to Cargill's headquarters in Lititz, Pennsylvania.[28]

All contracted-for cocoa was shipped to ABCO from plaintiff's warehouse in Ontario, California (with the exception of one instance, when part of a shipment came from Chicago, Illinois).[29] The cocoa which ABCO ultimately received came directly to Cargill's California warehouse from Brazil or Holland and never passed through Pennsylvania.[30]

ABCO communicated directly with Cargill's Customer Service Department located in Lititz, Pennsylvania by telephone, email, and fax to arrange the details for the pickup and delivery of contracted cocoa.[31]

No contracted cocoa shipped by Cargill to ABCO was shipped from, or passed through, Pennsylvania en route to its final destination in California.

Cargill representatives, including Hugo van der Goes, traveled to ABCO's offices in California to discuss contract numbers 2948 and 3070. Lisa Roberts also visited ABCO's offices

---

[28]        Day 2 Transcript at page 34 (testimony of Hugo van der Goes).

[29]        Plaintiff's Exhibits 13-17 (Sales Contract Numbers 17888, 17891, 18241, 19081, and 19082, respectively); Baron Declaration at ¶ 10.

[30]        Day 2 Transcript at pages 70-71 (testimony of Hugo van der Goes).

[31]        See Day 2 Transcript at page 38 (testimony of Hugo van der Goes); Plaintiff's Exhibit 26, email sent from Kenny Shook (Shipping/Safety Manager at ABCO in California) to Lynda Weaver (Customer Solutions Representative at Cargill in Lititz, Pennsylvania).

in California during the course of the business dealings between the parties.

No ABCO representative has ever traveled to Cargill's headquarters in Pennsylvania (or to any location outside of California) to meet with a representative of Cargill.[32]

Whenever ABCO purchased cocoa from Cargill, ABCO always (and only) remitted payment to Cargill in Los Angeles, California.[33]  Specifically, ABCO would deliver its payments in the form of a check to a lock-box owned by Cargill.[34]

### Contracts Involved in This Action

#### February 2011

On Friday, February 25, 2011, Carl Falcone, Director of Purchasing at ABCO, received an email from Lisa Roberts.[35] Ms. Roberts' email noted current events and the tight market for cocoa.  It stated that Cargill had sold out of cocoa from all countries of origin (except Brazil) for delivery in 2011 and was very close to selling out of all available cocoa from its Holland plant (the location where ABCO's supply of Russet cocoa

---

[32]       See Day 2 Transcript at pages 97 (testimony of Hugo van der Goes) and 123 (testimony of Allen Baron).

[33]       Chua Declaration at ¶ 12.

[34]       Day 2 Transcript at page 52 (testimony of Hugo van der Goes).

[35]       Defense Exhibit 4, Declaration of Carl Falcone executed November 27, 2013 ("Falcone Declaration"), at ¶ 1 and Exhibit A to the Falcone Declaration.

comes from) for delivery in 2012.[36]  Ms. Roberts encouraged Mr.
Falcone to consider immediately securing a sufficient supply to
cover ABCO's needs during 2012.[37]

---

[36]         Falcone Declaration, at ¶¶ 9-11 and Exhibits A-C to the Falcone
Declaration.

[37]         <u>Id.</u>

         Specifically, Ms. Roberts' initial email on February 25, 2011
stated:

> Hi,
>
> I'm sure [you] have seen the recent events in the news;
> things are only getting worse in the Ivory [C]oast.  This
> has lead (sic) to a sold out position for all our origins
> (except Brazil) for
> 2011 and we're now very close to selling out for FQ12 from
> our Holland plant and this is where your Russet comes from.
> I hate to put pressure on you like this but I want to make
> sure that you are covered before it gets tighter.  I don't
> mean to spring this on you last minute but this near sold
> out position happened very quickly and I am doing my best
> to keep up.  Following is valid through 8am on Monday.
> Price is as follows:
>
> Period: January 2012-July 2012
> Item: 10/12 Russet
> Quantity: 42,000 lbs +
> Price: $ 2.83/lb
>
> Fob: Ontario, CA
> Terms: net 10 days
>
> Period: January 2012-July 2012
> Item: 10/12 Midnight
> Quantity: 42,000 + lbs
> Price: $3.19/lb
> Fob: Ontario, CA
> Terms: net 10 days
>
> Cargill confidential.  Price valid for 24 hours.
>
> Please call my cell if there is anything you'd like to
> discuss today.
>
> Kind regards,
> Lisa

Exhibit A to Falcone Declaration.

-18-

That same day, Mr. Falcone responded to Ms. Roberts by email, stating: "Thank you very much for the market review. Kristin and I will get together then revert w/quantities.  We need to protect ABCO by securing supply and price."[38]

On Monday, February 28, 2011, Ms. Roberts again emailed Mr. Falcone.  Above a copy of the prior emails exchanged between Mr. Falcone and her on February 25, 2011, Ms. Roberts stated:  "Please let me know by the end of the day if you will be executing a contract.  Folks are booking like crazy and I want to make sure you secure your product."[39]

<u>March 2011</u>

On March 18, 2011 Ms. Roberts emailed Mr. Falcone concerning ABCO's supply needs for delivery in 2012.  She wrote:

> Hi Carl,
>
> My records show that you never booked your 2012 contract with me.  Lead times continue to tighten and pricing has increased since my last email. Here is today's price.  At a minimum, you should cover your Russet needs for 2012.  We still have some time on the midnight [cocoa powder] if you want to wait it out.
>
> Period: March 2012 – December 2012
> Item: 10/12 Russet
> Quantity: 42,000 lbs +
> Price: $ 2.93/lb
> Fob: Ontario, CA

---

[38]     Exhibit B to the Falcone Declaration, email sent from Carl Falcone to Lisa Roberts on Friday, February 27, 2011 at 8:44 a.m.

[39]     Exhibit B to the Falcone Declaration, email sent from Lisa Roberts to Carl Falcone on Monday, February 28, 2011 at 11:40 a.m.

Terms: net 10 days

Thanks,
Lisa[40]

After exchanging emails confirming that $2.93 per pound was the correct price, Mr. Falcone sent Ms. Roberts an email stating, "Please put an offer together for ¾ volume of last contract for both cocoas, thanks".[41]

Ms. Roberts responded that same day:

Hi,

We need to do even containers of 42,000. This year you booked 168,000 lbs of Russet and 42,000 lbs of Midnight[.]

I will book the following volumes then based on our minimums and your suggestion...

42,000 Midnight
126,000 Russet

Thanks,
Lisa[42]

Mr. Falcone replied to that email on March 18, 2011, stating to Ms. Roberts: "Good idea, I better strike now otherwise <$$$$$. And availability☺☺☺"[43]

---

[40]      Exhibit C to Falcone Declaration, email sent from Lisa Roberts to Carl Falcone on Friday, March 18, 2011 at 9:13 a.m.

[41]      Exhibit D to Falcone Declaration, email sent from Carl Falcone to Lisa Roberts on Friday, March 18, 2011 at 1:05 p.m.

[42]      Exhibit D to Falcone Declaration, email sent from Lisa Roberts to Carl Falcone on Friday, March 18, 2011 at 12:15 p.m.

[43]      Exhibit E to Falcone Declaration, email from Carl Falcone to Lisa Roberts sent on Friday, March 18, 2011 at 1:29 p.m.

Finally, Ms. Roberts replied:

> Hi Carl,
>
> You're now booked as follows:
>
> Period: March 2012 – December 2012
> Item: 10/12 Russet
> Quantity: 126,000 lbs
> Price: $ 2.93/lb
> Fob: Ontario, CA
> Terms: net 10 days
>
> Period: March 2012 – December 2012
> Item: 10/12 Midnight
> Quantity: 42,000 lbs
> Price: $ 3.32/lb
> Fob: Ontario, CA
> Terms: net 10 days
>
> Thanks for you continued business! Have a nice weekend.
>
> Lisa[44]

Subsequently, on March 30, 2011, Ms. Roberts and Mr. Falcone again exchanged emails.  Ms. Roberts emailed Mr. Falcone and informed him that she had received a call from Kristin Reedy (a Purchasing Manager at ABCO) requesting information about cocoa.  Mr. Reedy told Ms. Roberts that Ms. Reedy did not know that ABCO had already booked contracts with Cargill for cocoa.[45] Mr. Falcone responded to Ms. Roberts that day, asking "May I

---

[44]     Exhibit E to Falcone Declaration, email sent from Lisa Roberts to Carl Falcone on Friday, March 18, 2011 at 1:31 p.m.

[45]     Exhibit F to Falcone Declaration, email from Lisa Roberts to Carl Falcone sent Wednesday, March 30, 2011 at 10:51 a.m.

receive the contract to sign?"[46]  Mr. Roberts, in turn, replied: "You will receive it in the mail for signature within the next few weeks."[47]

### The Instant Dispute

At an unspecified time prior to ABCO's receipt of any written contracts as requested, Mr. Falcone and Ms. Roberts had another email exchange.  In this email exchange, Mr. Falcone asked Ms. Roberts if it would be possible to increase ABCO's quantity of 10/12 Russet cocoa by 42,000 pounds from 126,000 pounds to 168,000 pounds.[48]

Cargill took the position (and maintains in this action) that ABCO had thereby agreed to purchase not only the original 126,000 pounds of 10/12 Russet cocoa discussed in the March 18, 2011 emails, but also an additional 168,000 pounds of 10/12 Russet for the same period of March 2012 to December 2012.[49]

Mr. Falcone subsequently received in the mail copies of contract numbers 2948 (10/12 Russet), 3070 (10/12 Russet),

---

[46]      Exhibit F to Falcone Declaration, email from Carl Falcone to Lisa Roberts sent Wednesday, March 30, 2011 at 11:09 a.m.

[47]      Exhibit F to Falcone Declaration, email from Lisa Roberts to Carl Falcone sent Wednesday, March 30, 2011 at 11:43 a.m.

[48]      Falcone Declaration at ¶ 15.  The emails in this subsequent exchange between Mr. Falcone and Ms. Roberts do not appear as exhibits to the Falcone Declaration.

[49]      Id.

and 2945 (10/12 Midnight) which were already signed by a Cargill representative and which had tabs attached indicating where an ABCO representative should "SIGN & DATE".  ABCO did not sign any of contract numbers 2948, 3070, or 2945.[50]

The three contracts stemming from the February-March 2012 email exchanges between Ms. Roberts and Mr. Falcone were drafted on March 18, 2011 (contracts 400002945 and 400002948) and April 6, 2011 (contract 400003070).[51]  As with all contracts between Cargill and ABCO, these contracts were drafted and signed by a Cargill representative in Lititz, Pennsylvania and sent to ABCO in California.[52]

Although it did not sign contract number 2945, ABCO submitted Purchase Orders and paid for cocoa in fulfillment of contract number 2945.[53]

Cargill sent letters to ABCO demanding that ABCO submit Purchase Orders against (and ultimately pay for) the cocoa under contract numbers 2948 and 3070 (both 10/12 Russet).

---

[50]        Falcone Declaration at ¶ 15.

[51]        Plaintiff's Exhibits 2-3 (contract numbers 2948 and 3070, respectively); Defendant's Exhibits 1-2 (contract numbers 3070 and 2948, respectively).

[52]        Day 2 Transcript at pages 49-50 (testimony of Hugo van der Goes); van der Goes Declaration at ¶¶ 7-10; Amended Complaint at ¶¶ 9-12.

[53]        Day 2 Transcript at page 48 (testimony of Hugo van der Goes); Plaintiff's Exhibits 2-3 (contract numbers 2948 and 3070, respectively); Defendant's Exhibits 1-2 (contract numbers 3070 and 2948, respectively).

ABCO has never placed orders against, or taken delivery of, any of the 10/12 Russet cocoa under contract numbers 2948 and 3070.

<u>Long-Term Partnership</u>

On January 31, 2012, Mr. Falcone sent an email to Claudia Soltero, Western Sales Manager for Cargill concerning the 2012 cocoa contracts between Cargill and ABCO at issue here. Specifically, Mr. Falcone wrote:

> Claudia,
> Please advise when we can discuss the 2012 contracts.  We were under pres[sure] to book back in April 2011.  Here are a couple email exchanges to support my statement.
> *We want to be a long term partner w/Cargill* – (we switched from A[rcher ]D[aniels ]M[idland] to Cargill) and purchase from other Cargill divisions.
>
> I know we can work it out and am hopeful there will be a price concession.
> Thx[54]

## **CONTENTIONS OF THE PARTIES**

### **Contentions of Defendant**

Defendant ABCO contends that its motion to dismiss should be granted because plaintiff cannot establish personal

---

[54]      Plaintiff's Exhibit 5, email from Carl Falcone to Claudia Soltero sent Tuesday, January 31, 2012 at 10:51 a.m.; <u>see</u> Plaintiff's Exhibit 8 at page 2, copy of letter from Kimberly Yoder to John Fukushima dated June 1, 2010 which accompanied a sample of 10/12 Garnet cocoa powder that Cargill sent from Pennsylvania to ABCO at ABCO's request.

        That June 1, 2010 letter indicates that Mr. Fukushima requested a sample of Cargill's 10/12 Garnet cocoa "as an alternative to A[rcher ]D[aniels ]M[idland's] D-11-R", which is consistent with Mr. Falcone's later statement in his email to Ms. Soltero that ABCO switched from ADM to Cargill cocoa and further reflects ABCO's intention to establish an ongoing, long-term business relationship with Cargill.

jurisdiction over it on this breach of contract claim in the United States District Court for the Eastern District of Pennsylvania.

Regarding general jurisdiction, defendant ABCO contends that it has not engaged in systematic and continuous contacts with Pennsylvania.  Further, defendant contends that the exercise of general jurisdiction here is precluded by Daimler AG v. Bauman, 134 S.Ct. 746, 187 L.Ed.2d 624, (U.S. 2014), where the United States Supreme Court noted that, except in extraordinary circumstances, a corporation is "at home" and subject to general jurisdiction only in its state of incorporation and where it maintains its principal place of business.  Id. 134 S.Ct. at 761 n.19, 187 L.Ed.2d at 641 n.19.

Regarding specific jurisdiction, defendant ABCO contends that its contacts with Pennsylvania were fortuitous, attenuated, and merely the result of plaintiff's unilateral act of directing defendant to Pennsylvania.[55]  Therefore, according to ABCO, plaintiff Cargill cannot demonstrate that ABCO has the

---

[55]        In support of its contention that its contractual relationship with plaintiff Cargill had very little to do with Pennsylvania, defendant ABCO notes that Cargill solicited it to obtain supply contracts for the sale of cocoa; Cargill's employees made in-person visits to California but ABCO's employees never visited Pennsylvania or traveled outside of California for purposes of conducting business with Cargill; supply agreements were not executed or accepted in Pennsylvania; all contracted cocoa was delivered to ABCO from Cargill's Ontario, California warehouse and never passed through Pennsylvania; and all payments made by ABCO were sent to plaintiff's California address.

requisite minimum contacts with the forum state to support the exercise of specific personal jurisdiction.

Defendant ABCO further contends that the United States District Court for the Eastern District of Pennsylvania is an improper venue for this action because Pennsylvania cannot exercise personal jurisdiction over defendant within this judicial district and because a substantial portion of the events giving rise to plaintiff's claim did not take place in this judicial district.

Finally, defendant contends that plaintiff's request for attorney's fees should be stricken from the Amended Complaint under Rule 12(f) of the Federal Rules of Civil Procedure because that fee request has no legal basis.

### Contentions of Plaintiff

Plaintiff Cargill contends that the within Motion should be denied because defendant ABCO is subject to personal jurisdiction in the United States District Court for the Eastern District of Pennsylvania with respect to this action.

Regarding general jurisdiction, plaintiff Cargill concedes that defendant ABCO is not subject to general personal jurisdiction in Pennsylvania or this judicial district.[56]

---

[56]      Initially, defendant made, and plaintiff responded in opposition to, the argument that defendant is not subject to general personal jurisdiction in Pennsylvania.  Subsequently, at the hearing on the Motion,

(Footnote 56 continued):

-26-

Rather, plaintiff opposes the Motion on the basis, and asserts the propriety, of specific personal jurisdiction only.

Regarding specific personal jurisdiction, plaintiff Cargill contends that specific personal jurisdiction over defendant ABCO is proper because ABCO purposefully established minimum contacts with Pennsylvania (and this district) and the within action arose from those contacts.[57]

Plaintiff further contends that venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because defendant is subject to Pennsylvania's personal jurisdiction (and therefore a "resident" of Pennsylvania under 28 U.S.C. § 1391(c)(2)), and because events giving rise to

---

(Continuation of footnote 56):

plaintiff informed the court and defense counsel that, in light of Daimler AG v. Bauman, 134 S.Ct. 746, 187 L.Ed.2d 624 (U.S. 2014), it would proceed with, and present, only its argument concerning specific personal jurisdiction. (Day 1 Transcript at page 8.)  Accordingly, I consider plaintiff's general-personal-jurisdiction argument withdrawn and address only plaintiff's contentions in support of specific personal jurisdiction.

[57]          In support of that contention, plaintiff Cargill notes that the actions giving rise to its claim were continuations of an ongoing business relationship between the parties that ABCO purposefully established with Cargill, a corporation with its headquarters in Lititz, Pennsylvania.

Moreover, plaintiff Cargill notes that (1) ABCO requested and accepted product samples from ABCO which were shipped from Pennsylvania; (2) engaged in email, fax, and telephone communications with Cargill employees in Pennsylvania in support of ABCO's business relationship with Cargill; (3) the disputed contracts were partially executed (signed by a Cargill representative) in Pennsylvania; and (4) a cocoa contract which ABCO placed orders against and paid for, as well as the two contracts disputed in this action, contained a choice-of-law clause providing that  Pennsylvania law would govern the contract.

plaintiff's claims occurred in Lititz, Lancaster County, Pennsylvania, which is located in this judicial district.

## DISCUSSION

### A Single Issue Controls

Initially, I note that the within Motion ultimately turns on a single question[58] -- namely, whether defendant ABCO's contacts with Pennsylvania are sufficient to subject it to specific personal jurisdiction in Pennsylvania, and, more specifically, in this judicial district.

The within Motion turns on that single question because 28 U.S.C. § 1391(b)(1) provides that "[a] civil action may be brought in...a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  The conditional clause in § 1391(b)(1) quoted in the sentence above is immaterial here because ABCO is the only defendant in this action.

With respect to residency, the federal venue statute provides, in pertinent part, that

> an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal

---

[58]      Counsel for the parties confirmed as much prior to closing arguments.  (See Day 3 Transcript at page 16.)

> jurisdiction with respect to the civil action in question....

28 U.S.C.A. § 1391(c)(2).

Finally, the venue statute provides that

> [f]or purposes of venue under this chapter, in a State [(here, Pennsylvania)] which has more than one judicial district and in which a defendant that is a corporation [(here, ABCO)] is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C.A. § 1391(d).

Accordingly, if personal jurisdiction over defendant ABCO is proper in Pennsylvania, and in this district, then venue is proper here as well.

Plaintiff Cargill's corporate headquarters are located in Lititz, Pennsylvania.  The warehouse from which plaintiff Cargill shipped the samples requested by defendant ABCO is located in Elizabethtown, Pennsylvania.  Both of those locations are in Lancaster County, Pennsylvania, which is within this judicial district.  28 U.S.C. § 118(a).  For purposes of its personal jurisdiction and venue arguments in opposition to the within Motion, plaintiff does not present or rely on any

-29-

contacts by ABCO with Pennsylvania beyond those with Cargill's Lititz headquarters and its Elizabethtown warehouse.

Therefore, I now turn to the question of whether defendant ABCO's contacts with Pennsylvania are sufficient to establish specific personal jurisdiction over it for purposes of this breach of contract dispute with plaintiff Cargill.

## Specific Personal Jurisdiction

A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state, Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).

Pennsylvania's long-arm statute allows for the exercise of personal jurisdiction to the extent permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  42 P.S.A. § 5322(b); Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984).

The United States Court of Appeals for the Third Circuit has explained that this due-process inquiry "involves an assessment as to whether the quality and nature of the *defendant's* activity is such that it is reasonable and fair to require [that it] conduct [its] defense in that state." Metcalfe, 566 F.3d at 334 (quoting Time Share Vacation Club, 735 F.2d at 63)(internal quotations omitted, emphasis and alterations in original).

Due process requires that a nonresident defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940)); Mellon Bank, 960 F.2d at 1221-1222.

The United States Supreme Court has held that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958).

Consistent with that statement, the Third Circuit has explained that "[a]s a threshold matter, the defendant must have taken action...purposefully directed toward the forum State." Metcalfe, 566 F.3d at 334.  "In order to be subject to personal jurisdiction, a defendant's conduct in connection with the forum state must be such that he may 'reasonably anticipate being haled into court there.'" General Electric Company v. Deutz, AG, 270 F.3d 144, 150 (3d Cir. 2001)(quoting World-Wide

Volkswagen Corporation v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

"Specific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities. Deutz, AG, 270 F.3d at 159 (quoting Burger King Corporation v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

In other words, specific personal jurisdiction exists when the plaintiff's claim arises out of the defendant's activities within the forum such that the defendant could reasonably anticipate being haled into the state's courts. Rocke v. Pebble Beach Company, 541 Fed.Appx. 208, 210 (3d Cir. 2013)(citing Vetrotex Certainteed Corporation v. Consolidated Fiber Glass Products Company, 75 F.3d 147 (3d Cir. 1995)).

The United States Supreme Court has explained that the "purposeful availment" (or purposeful direction) requirement for specific personal jurisdiction is meant to "ensure[] that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person....'" Burger King, 471 U.S. at 475, 105 S.Ct. 2183, 85 L.Ed.2d at 542 (internal citations omitted).

-32-

Rather, the contacts with the forum state which "proximately result from actions by the defendant *himself*" are the focus of the inquiry.  Burger King, 471 U.S. at 475, 105 S.Ct. at 2183-2184, 85 L.Ed.2d at 542 (emphasis in original).

If a defendant "'deliberately'...has created 'continuing obligations' between himself and residents of the forum,...he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws[,] it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Burger King, 471 U.S. at 475-476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543.

### Contract Disputes

When assessing the existence of specific personal jurisdiction in a breach of contract action, the Supreme Court emphasizes a "highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." Burger King, 471 U.S. at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545.

Thus, the Third Circuit instructs that, "[i]n determining jurisdiction over a breach of contract claim, we

-33-

must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001).

Stated differently, the Third Circuit has explained that "i]n contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." Deutz, 270 F.3d at 150.

As the Third Circuit has explained, "[s]pecific jurisdiction frequently depends on physical contacts with the forum." Deutz, 270 F.3d at 150.  In contract disputes, "[a]ctual presence during pre-contractual negotiations, performance, and resolution of post-contract difficulties is generally factored into the jurisdictional determination." Deutz, 270 F.3d at 150 (citing Remick, 238 F.3d at 255–256.).

Here, nothing in the exhibits or testimony presented at the hearing demonstrates, supports an inference, that any agent or employee of defendant ABCO was ever physically present in Pennsylvania or this judicial district in connection with the business relationship between plaintiff Cargill and defendant ABCO from which this case arose.

However, the Third Circuit in Deutz went on to note that, "[i]n modern commercial business arrangements,...

-34-

communication by electronic facilities, rather than physical
presence, is the rule.  Where...long-term relationships have
been established, actual territorial presence becomes less
determinative." Deutz, 270 F.3d at 151.

Indeed, the Supreme Court in Burger King stated that,
where a defendant has deliberately created continuing
obligations between himself and a resident of the forum state,

> [j]urisdiction...may not be avoided merely
> because the defendant did not physically enter
> the forum State.  Although territorial presence
> frequently will enhance a potential defendant's
> affiliation with a State and reinforce the
> reasonable foreseeability of suit there, it is an
> inescapable fact of modern commercial life that a
> substantial amount of business is transacted
> solely by mail and wire communications across
> state lines, thus obviating the need for physical
> presence within a State in which business is
> conducted.  *So long as a commercial actor's
> efforts are "purposefully directed" toward
> residents of another State, we have consistently
> rejected the notion that an absence of physical
> contacts can defeat personal jurisdiction there*.

Burger King, 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d
at 543 (emphasis added).

Consistent with the above-quoted statement by the
Supreme Court in Burger King, supra, the Third Circuit has
explained that "[i]t is not significant that one or the other
party initiated the relationship.... In the commercial milieu,
the intention to establish a common venture extending over a
substantial period of time is a more important consideration."

_Deutz_, 270 F.3d at 150-151 (_Carteret Savings Bank, FA v._
_Shushan_, 954 F.2d 141, 150 (3d Cir. 1992))(internal citation
omitted).

This does not suggest that the manner in which a
business relationship developed, or by whom it was initiated, is
not relevant to the question of a foreign defendant's intent to
establish a commercial relationship extending over a substantial
period of time.  See _id._

<u>Application of the Above to This Case</u>

Here, defendant ABCO has sufficient minimum contacts
with Pennsylvania which relate to its business relationship with
plaintiff Cargill to support the exercise of specific
jurisdiction in this forum.

As described in the Facts section above, ABCO
commenced its business relationship with Cargill as the result
of the Mattson project.  Specifically, ABCO desired to utilize a
Mattson recipe which called for the use of a particular cocoa
supplied by Cargill.  Although Mattson effectively played match-
maker to the parties, ABCO nevertheless entered into its
business relationship with Cargill (a Pennsylvania corporation
headquartered in this district) voluntarily, based upon ABCO's
desire to manufacture chocolate seasoning for sale based on the
Mattson recipe.

Moreover, although many of the material acts in performance of the contested contracts (e.g., delivery of, and payment for, the cocoa) were to have occurred in California, defendant ABCO had significant communications with plaintiff Cargill's headquarters in Pennsylvania in furtherance of the parties' ongoing business relationship (e.g, fax transmission of Purchase Orders, email communications concerning shipping and delivery logistics).  Furthermore, as discussed below, defendant ABCO's argument that ABCO's own communications with Pennsylvania are "unilateral acts" which cannot be considered in the minimum-contacts analysis is unavailing.

Defendant relies heavily on the Opinion of the Third Circuit in the Vetrotex case as support for its argument that specific personal jurisdiction is lacking here.  However, Vetrotex is distinguishable from the present case in significant respects.

In Vetrotex, a Pennsylvania-seller-plaintiff and California-buyer-defendant engaged in "sporadic contacts" for the sale of fiberglass products during the 1980s.  Vetrotex, 75 F.3d at 149.  In May 1989, the Pennsylvania-seller-plaintiff informed the California-buyer-defendant that it would not be able to meet the buyer-defendant's fiberglass needs and suggested that the buyer-defendant locate another vendor for fiberglass.  Id.  Thus, the Third Circuit noted, the

-37-

Pennsylvania-seller-plaintiff terminated the business relationship between the parties.  Id. at 153.

Then, in February 1991 (21 months after the termination of the parties' business relationship) the Pennsylvania-seller-plaintiff reached out to the California-buyer-defendant and met with the buyer-defendant in California to solicit sales of fiberglass product that the seller-plaintiff had available.  Id. at 149.  Thus, the Third Circuit noted, the Pennsylvania-seller-plaintiff reached out to the buyer in California and created a new business relationship which the appeals court considered to be separate and distinct from prior relationship that the Pennsylvania-seller-plaintiff terminated nearly two years earlier.  Vetrotex, 75 F.3d at 153.

The Third Circuit in Vetrotex considered the parties' 1980s relationship to be "unrelated to the 1992 Supply Contract" which was at the center of the claims asserted by the Pennsylvania-plaintiff and, therefore, "not relevant to specific [personal] jurisdiction."  Id. at 153.

With respect to the new relationship that arose from the Pennsylvania-seller-plaintiff's solicitation of defendant-buyer in California, the Third Circuit noted that (1) the seller-plaintiff initiated that sales relationship by a personal visit to the buyer-defendant's headquarters in California; (2) none of the contracted fiberglass was shipped from, or

-38-

through, Pennsylvania; (3) seller-plaintiff sent all invoices for product sold under the contract from the seller-plaintiff's California office; (4) buyer-defendant sent payment for all product sold under the contract to seller-plaintiff's California office; and (5) the California-buyer-defendant's contact with the seller-plaintiff in Pennsylvania by telephone and letter were merely informational.  Id. at 151-152.

However, the Third Circuit went on to note that Vetrotex was "distinguishable from other cases where jurisdiction over a nonresident defendant has been premised largely on the defendant's contract with a resident of the forum state" in that Vetrotex was "not a case where the defendant solicited the contract or initiated the business relationship leading up to the contract", or a case "where the defendant engaged in extensive post-sale contacts with the plaintiff in the forum state."  Vetrotex, 75 F.3d at 152-153.

In those latter respects, this case is distinguishable from Vetrotex.  Here, the Pennsylvania-seller-plaintiff (Cargill) did not terminate a prior business relationship between the parties and then, after nearly two years, reach out to the California-buyer-defendant (ABCO) in California to initiate a second, separate business relationship that gave rise to the breach of contract claims asserted in the Pennsylvania courts.  Rather, as described in the Facts section above,

-39-

buyer-Defendant ABCO contacted the seller-plaintiff Cargill and initiated the direct business relationship leading up to the contracts at issue in this case.

Moreover, during the course of the parties business relationship, buyer-defendant ABCO sent Purchase Orders by fax to Cargill's Lititz, Pennsylvania headquarters and communicated with Cargill employees in Lititz, Pennsylvania to coordinate logistics regarding shipments of cocoa under the parties multiple contracts.  Thus, defendant ABCO's communications with Cargill's Pennsylvania headquarters were not merely informational, but were part of ABCO's efforts to effectuate the parties' business and facilitate performance of the cocoa sales contracts between it and Cargill.

Accordingly, defendant was not merely a "passive buyer" and the business relationship here is materially distinguishable from the second business relationship which the Third Circuit found relevant to specific personal jurisdiction in Vetrotex.   Vetrotex, 75 F.3d at 152.

For these reasons, and those discussed further below, I conclude that plaintiff Cargill has carried its burden of demonstrating that defendant ABCO has sufficient minimum contacts with Pennsylvania to warrant the exercise of specific personal jurisdiction over ABCO here.

<u>Choice-of-Law Provision</u>

Paragraph 19 in each of the contracts which are contested in this action (contract numbers 2948 and 3070) and the contract entered into on the same day as number 2948, but not contested here (contract number 2945), provides:  "Governing Law:  The laws of the jurisdiction of the address of the Seller on page 1 of this Contract, disregarding any conflict of law rules in that jurisdiction, will govern this Contract."[59]

The address of Cargill, the seller, is listed on page 1 of each of those contracts as 20 North Broad Street, Lititz, Pennsylvania 17543, United States of America.  Thus, the choice-of-law clause in those contracts calls for the application of Pennsylvania law.

Anticipating that plaintiff Cargill would rely on the choice-of-law clause as support of specific personal jurisdiction in Pennsylvania, Defendant's Brief states that "the presence of a choice of law provision in the alleged contracts does not change the jurisdictional analysis.  Defendant contends that this is so because choice-of-law provisions, in the absence of a forum-selection clause, are without legal significance and do not, as a matter of law, reflect a purposeful availing of an alleged forum."[60]

---

[59]      Plaintiff's Exhibits 1 through 3, each at page 3, ¶ 19.

[60]      Defendant's Brief at page 12.

Defendant further contends that "[n]early every court from the United States Supreme Court on down has held that a 'choice of law' provision is not determinative of whether the court can exercise personal jurisdiction over a foreign defendant."[61]

Plaintiff Cargill does not actually contend that the choice-of-law clause is determinative of the specific personal jurisdiction question.  Rather, plaintiff contends that, although a Pennsylvania choice-of-law provision alone is not sufficient to establish personal jurisdiction, the presence of that provision is a factor which further supports the existence of specific personal jurisdiction over defendant ABCO.[62]

Defendant ABCO is correct that there is no forum-selection clause in any of the parties' contracts in the record here which provides that disputes arising under such contracts must be litigated in state or federal court in Pennsylvania. However, defendant's argument that a choice-of-law provision is "without legal significance" where, as here, it is not accompanied by a forum-selection clause, is unsupported by

---

[61]     Defendant's Brief at page 12 (citing, among others, Burger King, 471 U.S. at 481, 105 S.Ct. at 2187, 85 L.Ed.2d at 546-547).

[62]     Plaintiff's Memorandum at page 7.

-42-

precedent -- in particular, by the Opinion of the Supreme Court in Burger King.

In Burger King, the Court concluded that the circuit court of appeals gave insufficient weight to the contractual provision there which contained a Florida choice-of-law provision.[63]  The Burger King Court rejected the position taken by the court of appeals that "choice-of-law provisions are irrelevant to the question of personal jurisdiction", and, in doing so, stated that "[n]othing in our cases...suggests that a choice-of-law provision should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes." Burger King, 471 U.S. at 481-482, 105 S.Ct. at 2187, 85 L.Ed.2d at 546-547.

The Burger King Opinion does not state or support defendant's proposition here that a choice-of-law provision is only relevant to the issue of personal jurisdiction if it is accompanied by a corresponding forum-selection clause.  Indeed,

---

[63]     That provision stated, specifically:

> *This Agreement* shall become valid when executed and accepted by BKC at Miami, Florida; it shall be deemed made and entered into in the State of Florida and *shall be governed and construed under and in accordance with the laws of the State of Florida.*  The choice of law designation does not require that all suits concerning this Agreement be filed in Florida.

Burger King, 471 U.S. at 481, 105 S.Ct. at 2187, 85 L.Ed.2d at 546 (emphasis added).

while the contractual provision containing the choice-of-law
clause in Burger King certainly allowed for the possibility that
disputes arising under the contract could be litigated in the
Florida courts, it certainly did not require that disputes under
that agreement be litigated in Florida.

In short, there was no forum-selection clause in the
contract at issue in Burger King -- the very case where the
United States Supreme Court stated that choice-of-law clauses
should not be ignored when assessing personal jurisdiction, and
which defendant cites as the primary support for its proposition
that a forum-selection clause is a necessary requirement for a
choice-of-law clause to have any legal significance on the issue
of personal jurisdiction.

Thus, defendant's argument concerning the irrelevance
of the Pennsylvania choice-of-law clause is unavailing.  The
presence of that clause is one factor which I consider when
assessing, based upon the totality of the circumstances here,
whether personal jurisdiction over defendant ABCO is proper.

Here, although defendant ABCO will ultimately contest
the validity, existence, and enforceability of contract numbers
2948 and 3070, it does not contest, and has fulfilled its
obligations by placing purchase orders against and paying for
cocoa under, contract number 2945.  And, as noted above,
contract number 2945, which was negotiated and agreed to by the

-44-

parties on the same day as disputed contract number 2948,
contains the same Pennsylvania choice-of-law provision as the
two disputed contracts, and there is no evidence suggesting that
defendant ABCO objected to the choice-of-law clause at any time.
Indeed, it is undisputed that ABCO placed Purchase Orders
against, and paid for, the full quantity of cocoa covered by
contract number 2945.

The presence of a Pennsylvania choice-of-law provision
in contract numbers 2945, 2948, and 3070, when viewed in the
context of the business relationship between the parties,
provides additional support for the conclusion that defendant
ABCO established an ongoing multi-year business relationship
with the Pennsylvania-resident plaintiff Cargill.  In doing so,
it purposefully availed itself of the benefits and protections
of Pennsylvania law.

### Defendant's "Unilateral Activity" Argument

In its closing argument at the hearing on the within
Motion, defendant raised an argument based upon exhibits
received into evidence during that proceeding.[64]  Specifically,
defendant ABCO contends that, pursuant to a line of precedent
beginning with Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228,
2 L.Ed.2d 1283 (1958), and ending with Rodale Press, Inc. v.
Submatic Irrigation Systems, Inc., 651 F.Supp. 208 (1986)

---

[64]        Day 3 Transcript at pages 61-76.

(Huyett, J.), the factual record demonstrates that this case presents a "most significant example" of "unilateral activity", which cannot support a finding of minimum contacts.

More specifically, defendant ABCO contends that Defense Exhibit 11 demonstrates that a Cargill employee based, and working, on the West Coast (Lisa Roberts) directed in a November 20, 2007 email to an ABCO employee (Kristin Reedy) that ABCO should forward all future purchase orders to Cargill's "main office" (in Lititz, Pennsylvania).[65]

Therefore, defendant ABCO contends, "all of the contact [that ABCO had] with Pennsylvania that follows by purchase orders being forwarded that way, [by] emails and phone calls, it's all at the direction of Cargill" and, because they were "at the direction of" the party seeking to establish personal jurisdiction, may not be considered by the court in determining whether specific personal jurisdiction exists, "[t]hey do not count."[66]

For the reasons explained below, this argument is unavailing.

In Hanson, the United States Supreme Court stated that

> [t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum

---

[65]        Day 3 Transcript at pages 67-73.

[66]        Id. at pages 73-74.

> State.  The application of that rule will vary
> with the quality and nature of the defendant's
> activity, but it is essential in each case that
> there be some act by which the defendant
> purposefully avails itself of the privilege of
> conducting activities within the forum State,
> thus invoking the benefits and protections of its
> laws.

Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-1240,
2 L.Ed.2d 1283, 1298 (1958).

The specific activity which the Court labeled

"unilateral" in Hanson bears mention here in light of the

unilateral-activity argument raised by defendant ABCO.

Specifically, that activity was the execution by settlor-

decedent Dora Browning Donner in Florida of an inter vivos power

of appointment, which appointed two trusts (each with a Delaware

trustee) as among the recipients to whom the corpus of another

trust should be paid upon her death.  See Hanson, 357 U.S.

at 238-239, and 253-254, 78 S.Ct. at 1231-1232, and 1239-1240,

2 L.Ed.2d at 1289, and 1297-1298.

The issue which the Court addressed in Hanson was

whether or not the Florida state courts could exercise personal

jurisdiction over the nonresident Delaware trustee. 357 U.S.

at 250-254, 78 S.Ct. at 1238-1240, 2 L.Ed.2d at 1296-1298.

Holding that the Florida courts lacked personal

jurisdiction over the Delaware trustee, the Supreme Court in

Hanson noted that defendant Delaware trustee had no office,

transacted no business, and held no trust assets in the forum

-47-

state of Florida.   Moreover, the Court noted that there was
nothing in the record suggesting that the defendant Delaware
trustee ever solicited (sought out) business in Florida, either
in person or by mail.   Hanson, 357 U.S. at 251, 78 S.Ct.
at 1238, 2 L.Ed.2d at 1296.

The Court distinguished Hanson from an earlier case,
McGee v. International Life Insurance Company, 355 U.S. 220,
78 S.Ct. 199, 2 L.Ed.2d 223 (1957).   Hanson, 357 U.S. at 251-
252, 78 S.Ct. at 1238-1239, 2 L.Ed.2d at 1296-1297.

In McGee, the nonresident Texas insurance company
defendant solicited a reinsurance agreement with the insured
plaintiff, a California resident.   Hanson, 357 U.S. at 251-252,
78 S.Ct. at 1238-1239, 2 L.Ed.2d at 1296-1297 (discussing McGee,
supra).[67]   When the insured brought suit for breach of the

---

[67]          The McGee Court explained the material facts there as follows:

In 1944, Lowell Franklin, a resident of California,
purchased a life insurance policy from the Empire Mutual
Insurance Company, an Arizona corporation.  In 1948 the
respondent agreed with Empire Mutual to assume its
insurance obligations.  *Respondent then mailed a
reinsurance certificate to Franklin in California offering
to insure him in accordance with the terms of the policy he
held with Empire Mutual.*  He accepted this offer and from
that time until his death in 1950 paid premiums by mail
from his California home to respondent's Texas office.
Petitioner, Franklin's mother, was the beneficiary under
the policy.  She sent proofs of his death to the respondent
but it refused to pay claiming that he had committed
suicide.  It appears that neither Empire Mutual nor
respondent has ever had any office or agent in California.
And so far as the record before us shows, respondent has

(Footnote 67 continued):

-48-

reinsurance agreement in California, the Court in McGee
ultimately held that the exercise of personal jurisdiction over
the Texas insurance company by the California courts did not
violate due process because the California suit was an action
for breach of a contract which had a "substantial connection" to
California -- the contract was delivered in California, premiums
were paid from California, and the insured was a California
resident.  McGee, 355 U.S. at 223, 78 S.Ct. at 201, 2 L.Ed.2d
at 226.  Moreover, the Texas insurer solicited the California
insured.

        In distinguishing the Texas insurance company in McGee
from the Delaware trustee in Hanson the Court focused on the
fact that the record in Hanson "disclose[d] no instance in which
the *trustee* performed any acts in Florida that bear the same
relationship to the [cause of action] as the solicitation in
McGee."  Hanson, 357 U.S. at 252, 78 S.Ct. at 1239, 2 L.Ed.2d
at 1297 (emphasis in original).

        That emphasis by the Hanson Court on the word
"trustee" -- the defendant -- coincides with the Court's
statements concerning unilateral activity, which follow its

---

(Continuation of footnote 67):

                        never solicited or done any insurance business in
                        California apart from the policy involved here.

McGee, 355 U.S. at 221-222, 78 S.Ct. at 200, 2 L.Ed.2d at 225 (emphasis
added).

                                -49-

discussion of McGee in the Hanson Opinion.  The Hanson Court's focus on the act of solicitation of business by the Texas insurer in McGee is similarly noteworthy given the absence of any record evidence in Hanson that the Delaware trustee had reached out and sought business opportunities in Florida , even remotely by mail.  See Hanson, 357 U.S. at 252, 78 S.Ct. at 1239, 2 L.Ed.2d at 1297.

Here, unlike the Delaware trustee in Hanson, and like the Texas insurer in McGee, defendant ABCO reached out to Pennsylvania-plaintiff Cargill (admittedly, at first, through Cargill's West Coast Sales Manager located in Oregon) and established an ongoing business relationship with Cargill as a supplier of ABCO with its headquarters in Lititz, Pennsylvania.

Mr. Baron testified credibly at the hearing that the business relationship between ABCO and Cargill arose from the Mattson project.  The fact that ABCO requested samples of different types of cocoa in addition to the type required for the Mattson seasoning does not undermine Mr. Baron's testimony that the Mattson project sparked the relationship between ABCO and Cargill.

Rather, it demonstrates that ABCO (a manufacturer) was evaluating the various varieties of cocoa (raw material) offered by Cargill (a supplier) for potential use in ABCO's business. This, in turn, further demonstrates that ABCO voluntarily

-50-

entered an ongoing business relationship, which ABCO itself viewed as long-term, with a supplier of raw materials with its headquarters in Lititz, Pennsylvania.

Defendant ABCO relies substantially on Rodale Press, Inc. v. Submatic Irrigation Systems, Inc., supra, in its closing argument as support for the proposition that precedent forbids this court to consider any communication that ABCO had with Cargill (that is, Purchase Orders, phone calls, fax transmissions, emails) after November 20, 2007 when Lisa Roberts (West Coast Sales Manager for Cargill) told an ABCO employee that future purchase orders should be sent to Cargill's headquarters in Lititz, Pennsylvania.

In granting the Texas defendant's motion to dismiss in the Rodale Press case, the district court cited the Opinions of the United States Supreme Court in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and Hanson v. Denkla, supra, for the proposition that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." Rodale Press, 651 F.Supp. at 211. The district court went on to state:

> The facts of the present case show nothing more
> than unilateral activity by the plaintiff in
> *requiring* that payments and orders be mailed to
> it in Pennsylvania, and in *publishing* the maga-
> zine there. The mere fact that the defendant

> knew (or should have known) that the plaintiff
> was a Pennsylvania publisher is not such a
> connection that this defendant should have
> reasonably expected to be haled into court in
> Pennsylvania.

Id. (emphasis added).

With respect to plaintiff's publication of a magazine in the forum state, that is certainly unilateral activity (as such activity is described by the Supreme Court in Hanson and Burger King) by the Pennsylvania-publisher-plaintiff.  It is in-forum action by someone other than the nonresident defendant. As such, the district court's statement that publishing by plaintiff in Pennsylvania cannot be charged against the nonresident defendant for purposes of the minimum-contacts analysis is surely correct.

Moreover, even the act of "requiring" -- that is, requesting or commanding -- that the nonresident defendant mail orders and payments to Pennsylvania may properly be considered a unilateral act (as understood in Hanson) by the Pennsylvania plaintiff in that it was plaintiff (and not the nonresident defendant) who articulated the requirement or made the request.

However, the Rodale Press case does not go so far as to say that the nonresident defendant's voluntary assent to the plaintiff's requirement, and defendant's subsequent mailing to the forum state of orders and payments (an action by the nonresident defendant), are unilateral activities which must be

-52-

excluded from consideration when conducting a minimum contacts analysis.  Moreover, even if Rodale Press did go that far, it would not be binding precedent on this court and would be unpersuasive because it would be inconsistent with the concept of unilateral activity as set forth by the Supreme Court in Hanson, as discussed above.

In short, the authority relied upon by defendant simply does not support its proposition that I may not consider any communications that ABCO had with Cargill's headquarters in Pennsylvania after November 2007, when Lisa Roberts requested that ABCO transmit future purchase orders directly to Cargill's headquarters in Lititz, Pennsylvania.

Unilateral activity is conduct by another party or a third person and, as such, is not attributable to a foreign defendant for purposes of specific personal jurisdiction.  Acts by ABCO (even if, in part, at the request of Cargill) are just that, acts *by ABCO*.  They are not acts by another party or a third person and, thus, are not unilateral activity and may properly be considered for minimum-contacts purposes.  Accordingly, I have considered the actions of defendant ABCO, through its agents and employees, to determine whether there is specific personal jurisdiction here.

<u>"Fair Play and Substantial Justice"</u>

When a plaintiff has demonstrated minimum contacts, the court must "consider whether the exercise of personal jurisdiction would otherwise comport with 'traditional notions of fair play and substantial justice.'"  <u>O'Connor</u>, 496 F.3d at 324 (quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945)).

The existence of defendant's minimum contacts with the forum state renders the exercise of personal jurisdiction "presumptively constitutional" and defendant bears the "heavy" burden to "show an absence of fairness or lack of substantial justice".  <u>Id.</u>

As the Third Circuit has explained, the United States Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness -- namely, "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies".  <u>O'Connor</u>, 496 F.3d at 324.

Defendant ABCO makes its stand in opposition to specific jurisdiction on minimum-contact grounds and does not press separately an argument that it would be fundamentally

-54-

unfair for it to have to litigate this action in the Eastern
District of Pennsylvania, as opposed to the Eastern District of
California where it concedes that both personal jurisdiction and
venue are proper.

Consideration of the pertinent factors demonstrates
that this is not one of the "rare and compelling cases where
jurisdiction would be unreasonable despite the presence of
minimum contacts." Id. at 325.  The forum State's interest in
adjudicating the dispute and the plaintiff's interest in
obtaining convenient and effective relief each weigh in favor of
adjudication of this dispute in this forum and venue.

With respect to the efficiency of the interstate
judicial system and the burden on defendant ABCO, defendant has
not demonstrated that that those factors weigh against the
reasonableness of personal jurisdiction here.  There are
potential witnesses located at the parties respective
headquarters and, thus, there will be a certain (and similar)
level of logistical inconvenience to one party regardless of
whether this case is litigated here or in the Eastern District
of California.

Moreover, defendant is represented by local counsel
based in this district, as well as counsel from California
admitted here pro hac vice.  Defendants litigation
representative, Allen Baron, traveled from California for each

-55-

day of the Motion hearing, including the third and final day when only closing arguments were to be presented and his presence was not required (and, indeed, had been excused at the close of the second day of the hearing).

For the reasons expressed above, I conclude that defendant ABCO has not presented a compelling case of unreasonableness.  Therefore, and because plaintiff has demonstrated sufficient minimum contacts with the forum state and this district (as discussed above), I deny defendant's Motion to dismiss for lack of personal jurisdiction and for improper venue.

<u>**CONCLUSION**</u>

For all the foregoing reasons, I deny in part and dismiss as moot in part defendant's Motion to dismiss and to strike.  Specifically, I deny defendant's motion to dismiss for lack of personal jurisdiction and for improper venue because defendant has sufficient minimum contacts with Pennsylvania, and this judicial district, to warrant specific personal jurisdiction here, which also renders venue proper.

I dismiss as moot defendant's motion to strike because plaintiff withdrew the request for attorney's fees which defendant sought to strike.